United States District Court
Southern District of Texas
**ENTERED**

August 05, 2025

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JOHNATHON CHRISTIAN MACDONALD, TDCJ #02228800 | § § § § | |
| Petitioner, | § | |
| v. | § § | CIVIL ACTION NO. H-22-2119 |
| ERIC GUERRERO,[1] | § § | |
| Respondent. | § § | |

**MEMORANDUM OPINION AND ORDER**

State inmate Johnathon Christian MacDonald has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his 2018 Texas conviction and sentence for aggravated sexual assault of a child. (Docket Entry Nos. 1, 2, 3). MacDonald is represented by counsel. The respondent has answered and submitted a copy of the state-court record, asserting that the petition should be denied because the claims lack merit. (Docket Entry Nos. 7, 10). MacDonald has not responded to the respondent's answer. Based on the pleadings, the answer, the record, and the applicable law, the court denies the petition for a writ of habeas corpus. The reasons are explained below.

---

[1] Bobby Lumpkin was the previous named respondent in this action. Eric Guerrero has succeeded Lumpkin as Director of the Texas Department of Criminal Justice – Correctional Institutions Division. Under Rule 25(d) of the Federal Rules of Civil Procedure, Guerrero is automatically substituted as a party.

## I.      Background and Procedural History

### A.      Factual Background

MacDonald challenges his conviction for the aggravated sexual assault of his young daughter, J.B.[2]  On direct appeal, the intermediate state court of appeals summarized the relevant facts presented at trial:

> A patrol officer for the Conroe Police Department testified that in May 2017, he was dispatched to an apartment complex in Montgomery County to investigate a report of a possible aggravated sexual assault of a child.  The officer arrived at the scene and spoke with T.T., who told him she babysat MacDonald's daughter, J.B., in her apartment along with her own three-year-old son, K.S.  She told the officer that earlier that evening before MacDonald came to pick up J.B., she found her son naked in the corner of his bedroom with J.B.'s head in his lap.

> After the officer interviewed T.T. and took her statement, he then contacted CPS.  The officer told the jury that he took steps to ensure CPS addressed the situation as soon as possible, because he had concerns about MacDonald's continued access to J.B. if the child stayed with MacDonald in his apartment.  He testified that a CPS caseworker met him at MacDonald's apartment around 4:00 the next morning.  The officer described MacDonald's demeanor as agitated and defensive when they explained why they were there.  The officer stayed in the bedroom of the apartment with MacDonald while the CPS caseworker spoke with J.B. in the living room.  The officer testified that after speaking with J.B., the caseworker decided to remove her from the home.  MacDonald then called his mother, J.J.M., to pick up J.B.  The officer returned to the station and prepared his report.

> A clinical psychologist from the Harris County Children's Assessment Center testified for the State.  He explained the general reasons why children often make delayed outcries rather than reporting abuse immediately.  He testified that children are usually abused by people who are around them and have access to them, who most often are family members.  The psychologist also explained that if a child has been abused by a family member, they may have both positive and negative emotions about that person; they may love the individual but hate the fact that they have been abused.

> Detective Bret Irvine with the Conroe Police Department also testified.  Once assigned the case, he reviewed the patrol officer's report.  The detective told the jury he then contacted the CPS caseworker to schedule a forensic interview for J.B., which he observed from a separate room.  During the interview, he wanted to corroborate the information T.T. provided and some of J.B.'s statements about her

---

[2] The court refers to J.B., the victim, and T.T., the outcry witness, by their initials consistent with the Texas court of appeals opinion in MacDonald's state case.

interactions with MacDonald. Detective Irvine testified that J.B. provided sensory details during the forensic interview, which he viewed as significant in the investigation. The detective also scheduled an appointment for J.B. to see a sexual assault nurse examiner (SANE). The detective said that J.B.'s grandmother, J.J.M., brought her to these appointments; however, he had concerns that J.J.M. was not being protective of J.B., did not believe the abuse occurred, and might try to contaminate J.B.'s recall. Detective Irvine testified that CPS eventually removed J.B. from J.J.M.'s care.

Detective Irvine testified that he also scheduled and observed a forensic interview for K.S., T.T.'s son. The detective described T.T. as "concerned" and "helpful." Detective Irvine testified that T.T. recorded three conversations with J.B. on her phone, and he had T.T. bring her phone to the police station so they could download the files.

Detective Irvine also told the jury he interviewed MacDonald, who denied sexually abusing his daughter and advised Detective Irvine he believed his daughter was lying. The detective described MacDonald as "very emotional" during the interview. At the conclusion of the interview, MacDonald provided a written statement again denying any inappropriate contact with his daughter. Detective Irvine explained that the police did not collect any clothing or evidence from the apartment because they were not provided a timeline for when the last incident of abuse may have occurred and therefore, had no idea what clothing they would need to seize. The detective testified that when he reviewed the SANE's report, the history provided by J.B. was consistent with what she said in the forensic interview, and he applied for an arrest warrant.

The SANE testified regarding her examination of J.B. She conducted a medical exam on J.B. a few weeks after the incident was reported. A redacted copy of her report was admitted as evidence at trial. The SANE testified regarding the contents of her report, which contained quoted language from J.B. regarding her father assaulting her anally with his sexual organ. The SANE noted that J.B. had excellent verbal skills for her age. The SANE testified that she did not find any evidence of injury or trauma and explained why that is not uncommon. On cross-examination, the SANE confirmed that the only information she had regarding anal penetration came from J.B.

The forensic interviewer testified as the outcry witness in this case. She explained that J.B. could not provide a full event narrative, which was consistent with the child's age. The interviewer testified that J.B. could answer some open-ended questions, knew the difference between the truth and a lie, and promised to tell the truth. She testified that she asked J.B. what she liked about her dad, and J.B. responded "his lovins." The interviewer then asked J.B. to tell her about her dad's "lovins," and she responded that he kisses her on the tongue. The forensic interviewer told the jury how J.B. described her father sexually assaulting her,

which was consistent with the description contained in the SANE's report. The interviewer also testified regarding the sensory details J.B. provided.

Following a hearing outside the jury's presence, the trial judge ruled J.B. was competent to testify. J.B. testified and described how her dad sexually assaulted her. J.B.'s description of the abuse was similar to the information contained in the SANE's report and the outcry witness's testimony. During J.B.'s testimony, J.B. circled the male genitalia and an anus on anatomically correct drawings. J.B. said that MacDonald told her not to scream, and she provided sensory details when asked why she screamed. She said this was not something that was pretend; it was real.

T.T., J.B.'s babysitter, also testified. T.T. testified she babysat J.B. for about six months. T.T. contacted police because something happened with J.B. and her son that concerned her. She testified she had been folding laundry and went to check on J.B. and her son, K.S. T.T. testified that her son was naked from the waist down, and J.B. had her head in his lap. After T.T. separated the children and spoke with J.B. about what happened, T.T. had concerns about MacDonald. Later that night, T.T. used her phone and recorded her conversations with J.B. After these conversations, T.T. spoke with her husband, and they decided to call the police.

The State sought to admit these recordings, but the defense objected based on hearsay, which the trial court initially sustained. However, on cross-examination, the defense questioned T.T. about whether she was a forensic interviewer and implied that T.T. coached J.B. The State again sought to admit the recordings, arguing that the defense had opened the door during its cross-examination. At that point, the trial court admitted the recordings over defense objection, noting that the defense "opened the door." The State played T.T.'s recordings for the jury in which J.B. is heard calling her dad a "meanie head," explaining that she sucked on her daddy's sexual organ and had learned it from him. T.T. denied telling J.B. what to say.

An expert in memory recall and how memories are formed testified for the defense. He explained that a young child's memory capability is considerably limited when compared to that of older children and adults. The expert testified that it was possible for children who viewed pornography to confuse that with something that happened to them.

MacDonald testified at trial and denied molesting his daughter, having anal sex with her, or touching her inappropriately. He said that CPS removed J.B. from her mother in February of 2015 and placed J.B. with him. MacDonald testified that J.B. lived with him primarily from June 2015 through May 2017. He told the jury he believed his daughter lied about him.

*MacDonald v. State*, No. 09-18-00399-CR, 2020 WL 1036443, at *1–3 (Tex. App.—Beaumont Mar. 4, 2020, pet. ref'd) (internal footnotes omitted).

### B.    The State Court Proceedings

MacDonald was indicted in September 2017 in Cause Number 17-06-7133 for aggravated sexual assault of a child in violation of Texas Penal Code § 22.021(f)(1).  (*See* Docket Entry No. 7-1 at 26; Docket Entry No. 1 at 1).  After a trial in 2018, a jury found him guilty as charged in the indictment.  (*See* Docket Entry No. 7-1 at 132; Docket Entry No. 1 at 1–2); *see also MacDonald*, 2020 WL 1036443, at *1.  He was sentenced to 45 years in prison.  (*See* Docket Entry No. 7-1 at 137; Docket Entry No. 1 at 1).

MacDonald filed a direct appeal of his conviction.  In March 2020, the Ninth Court of Appeals affirmed MacDonald's conviction, and in July 2020, the Texas Court of Criminal Appeals refused his petition for discretionary review.  *See MacDonald*, 2020 WL 1036443, at *1; (Docket Entry No. 7-11).

MacDonald submitted a state application for a writ of habeas corpus in October 2021.  (*See* Docket Entry No. 7-22 at 46).  The state district court judge ordered MacDonald's trial attorneys, Ms. Robbie Barker and Mr. Jerrod Walker, to submit affidavits responding to MacDonald's claims of ineffective assistance of counsel.  (*See* Docket Entry No. 7-23 at 15–17).  Ms. Barker complied as ordered.  (*See id.* at 23–25).  In March of 2022, the state district court judge issued an order on the state habeas application, recommending that relief be denied.  (*Id.* at 42–44).

In June 2022, the Texas Court of Criminal Appeals denied the application, without written order, on the findings of trial court without a hearing and on the court's independent review of the record.  (Docket Entry No. 7-20).

### C.    Petitioner's Federal Habeas Petition

MacDonald's federal habeas petition asserts the following claims:

(1) trial counsel provided ineffective assistance by failing to interview and present witnesses;

(2) trial counsel provided ineffective assistance by failing to investigate and present an alternative perpetrator theory of defense; and

(3) the evidence was insufficient to support his conviction.

(Docket Entry No. 1).

The respondent has filed an answer in response to the § 2254 petition, arguing that MacDonald's claims lack merit.  (Docket Entry No. 10).  MacDonald has not responded.

## II.    The Applicable Legal Standards

### A.    The Antiterrorism and Effective Death Penalty Act

This federal petition for habeas corpus is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA).  *See Woodford v. Garceau*, 538 U.S. 202, 205–08 (2003).  Under the AEDPA, federal habeas relief based upon claims that were adjudicated on the merits by the state courts cannot be granted unless the state court's decision (1) "was contrary to, or involved an unreasonable application  of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 7–8 (2002) (quoting 28 U.S.C. § 2254(d)); *Cobb v. Thaler*, 682 F.3d 364, 372–73 (5th Cir. 2012) (same).  "A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts."  *Gray v. Epps*, 616 F.3d 436, 439 (5th Cir. 2010) (citing

6

*Williams v. Taylor*, 529 U.S. 362, 404–08 (2002)).  To constitute an "unreasonable application of" clearly established federal law, a state court's holding "must be objectively unreasonable, not merely wrong; even clear error will not suffice."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014)).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Where a claim concerns a question of fact, the AEDPA precludes federal habeas relief unless the state court's adjudication of the merits was based on an "unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d)(2); *see also Martinez v. Caldwell*, 644 F.3d 238, 241–42 (5th Cir. 2011).  A state court's factual determinations are "presumed to be correct" unless the petitioner rebuts those findings with "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  This presumption of correctness extends not only to express factual findings, but also to implicit or "unarticulated findings which are necessary to the state court's conclusion of mixed law and fact.'"  *Murphy v. Davis*, 901 F.3d 578, 597 (5th Cir. 2018) (quoting *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001)).  A federal habeas court "may not characterize these state-court factual determinations as unreasonable 'merely because [it] would have reached a different conclusion in the first instance.'"  *Brumfield v. Cain*, 576 U.S. 305, 313–14 (2015) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).  "Instead, § 2254(d)(2) requires that [a federal court] accord the state trial court substantial deference."  *Id.* This court may consider only the factual record that was before the state court in determining the

reasonableness of that court's findings and conclusions. *Cullen v. Pinholster*, 563 U.S. 170, 180–81 (2011).

When a claim challenges a mixed question of fact and law, the state court's determinations are entitled to deference "unless the findings were 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.'" *Martinez*, 644 F.3d at 242 (quoting § 2254(d)(1)). Generally, federal courts presume that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting that same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *see also Jackson v. Johnson*, 194 F.3d 641, 651 (5th Cir. 1999) ("When faced with a silent or ambiguous state habeas decision, the federal court should 'look through' to the last clear state decision on the matter."). When, however, "a state court's decision is unaccompanied by an explanation," and the lower courts did not issue a reasoned opinion, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98; *see also Salts v. Epps*, 676 F.3d 468, 480 n.46 (5th Cir. 2012) ("[W]here a state court summarily denies a petitioner's motion, and provides no statement of its reasons, 'the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.'") (quoting *Harrington*, 562 U.S. at 98).

### B.    The Summary Judgment Standard in Habeas Corpus Proceedings

"As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000) (citing Rule 11 of the Rules Governing § 2254 Cases in the United States District Courts and Fed. R. Civ. P. 81(a)(2)). In ordinary civil cases a district judge considering a motion for summary judgment is required to construe the facts in the case in

the light most favorable to the nonmoving party. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014). The AEDPA, however, modifies summary judgment principles in the habeas context, and Rule 56 "applies only to the extent that it does not conflict with the habeas rules." *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004). "Therefore, § 2254(e)(1)—which mandates that findings of fact made by a state court are 'presumed to be correct'—overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party." *Id.*

MacDonald is represented by counsel. His habeas petition is therefore not afforded the benefit of liberal construction given to self-represented litigants. *See Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011) ("The filings of a federal habeas petitioner who is proceeding *pro se* are entitled to the benefit of liberal construction.") (citations omitted); *Melancon v. Kaylo*, 259 F.3d 401, 407 (5th Cir. 2001) ("[Petitioner]'s pro se application for habeas relief is entitled to liberal construction.") (citations omitted); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## III.    Discussion

### A.    The claim that the evidence was insufficient.

MacDonald contends that the evidence at trial was insufficient to support his conviction. MacDonald provides no factual allegations in support of this claim. The entirety of his argument is that "[t]he evidence adduced by the prosecutor was insufficient to prove each and every element of the charged offense beyond a reasonable doubt." (Docket Entry No. 1 at 12). MacDonald raised this insufficiency-of-the-evidence claim on direct appeal, without success.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *United States v. Davis,* 735 F.3d 194, 198 (5th Cir. 2013) (quoting *In re Winship,* 397

U.S. 358, 364 (1970)). A federal habeas court reviewing a state-court conviction analyzes a challenge to the legal sufficiency of the evidence under *Jackson v. Virginia,* 44 3 U.S. 307 (1979), which reflects the federal constitutional due process standard. *See Woods v. Cockrell,* 307 F.3d 353, 358 (5th Cir. 2002). The federal court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319. "*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam). A federal habeas court questions only whether the state court's assessment of the *Jackson* standard was unreasonable. *See id.*; 28 U.S.C. § 2254(d)(l). Together, *Jackson* and the AEDPA create a "double dose of deference that can rarely be surmounted." *Boyer v. Belleque,* 659 F.3d 957, 964 (9th Cir. 2011).

The state court of appeals applied the *Jackson* standard to MacDonald's claim and concluded that there was sufficient evidence to support his conviction for aggravated sexual assault. The state court explained:

> We first address MacDonald's third issue, in which he contends the evidence was legally insufficient to prove beyond a reasonable doubt that he was the perpetrator of the crime. When evaluating the legal sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 902 n.19 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The jury is the sole judge of the witnesses' credibility and weight to be given their testimony. *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016). We defer to the jury's responsibility to fairly resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *See Hooper*, 214 S.W.3d at 13. We presume that the jury resolved conflicting inferences in favor of the verdict. *See Brooks*, 323 S.W.3d at 889 n.13; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). "[We] must evaluate all of the evidence in the record, both direct and circumstantial,

whether admissible or inadmissible." *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999) (citation omitted).

Texas Penal Code Section 22.021 provides that a person commits aggravated sexual assault if he intentionally or knowingly causes the penetration of the anus of a child by any means or causes the anus of the child to contact the sexual organ of another person, including the actor, and the victim is under the age of fourteen. *See* Tex. Penal Code Ann. § 22.021(a)(1)(B)(i), (a)(2)(B). A child victim's testimony alone is sufficient to support a conviction for aggravated sexual assault. *See* Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1). Furthermore, testimony regarding a child victim's outcry statement alone can be sufficient to support a conviction for aggravated sexual assault. *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd).

Here, the jury had the benefit of both the victim's testimony and outcry witness testimony. The child victim, J.B., testified that her father put his sexual organ in her anus, and the outcry witness provided similar testimony. Viewing the evidence in the light most favorable to the verdict and deferring to the jury's decision on the weight and credibility of the testimony, we conclude that a reasonable factfinder could have found MacDonald guilty of the aggravated sexual assault of J.B. beyond a reasonable doubt. *See id.*; *see also* Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1); *Tate*, 500 S.W.3d at 413; *Brooks*, 323 S.W.3d at 902 n.19; *Clayton*, 235 S.W.3d at 778; *Hooper*, 214 S.W.3d at 13. We overrule MacDonald's third issue.

*MacDonald*, 2020 WL 1036443, at *3–4 (internal footnotes omitted).

As noted by the state court, there were several pieces of evidence that the jury could have relied on to find MacDonald guilty of the offense charged. J.B. testified that MacDonald put his penis in her anus (*see* Docket Entry No. 7-5 at 46–63) and during the testimony of T.T., the outcry witness, audio recordings of conversations between T.T. and J.B. were played (*see id.* at 79–103). MacDonald does not offer any argument in support of this claim, let alone refute any of the state court's findings of fact, which are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1); *Sumner v. Mata*, 449 U.S. 539, 547 (1981) (observing that the presumption of correctness "applies to factual determinations made by state courts, whether the court be a trial court or an appellate court"). Under these circumstances, the state court's well-reasoned opinion is entitled to "great weight" on federal habeas review. *Parker v. Procunier*, 763 F.2d 665, 666

11

(5th Cir. 1985) (citing *Jackson*, 443 U.S. at 310 n.15); *see also Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993) ("Where a state appellate court has conducted a thoughtful review of the evidence . . . its determination is entitled to great deference.").

To the extent that MacDonald asks this court to reweigh the evidence and decide if the jury's decision was correct, he asks for relief "beyond the scope of review" permitted under *Jackson. See Schlup v. Delo,* 513 U.S. 298, 330 (1995). A federal habeas court may not substitute its view of the evidence for that of the fact-finder. *See Weeks v. Scott,* 55 F.3d 1059, 1062 (5th Cir. 1995) (citation omitted). "All credibility choices and conflicting inferences are to be resolved in favor of the verdict." *Ramirez v. Dretke,* 398 F.3d 691, 695 (5th Cir. 2005) (citation omitted).

Viewing all of the evidence under the doubly deferential standard that applies on federal habeas review, MacDonald fails to show that the state court's decision was objectively unreasonable or that he is entitled to relief on this claim.

### B.    The claim of ineffective assistance of counsel.

Ineffective assistance of counsel claims are analyzed under *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under *Strickland*, a petitioner must demonstrate both constitutionally deficient performance by counsel and actual prejudice to the defense as a result. *See Strickland*, 466 U.S. at 687. "Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable." *Id.* Failing to show either deficient performance or prejudice is fatal to an ineffective assistance claim. *See id.*; *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998). "Like AEDPA, *Strickland* establishes a deferential standard," and in order to prevail on an ineffective assistance of counsel claim in a § 2254 proceeding, a petitioner "must prove both that his counsel's performance was objectively deficient and that his counsel's deficiency prejudiced him, and that no reasonable jurist

could conclude otherwise." *Williams v. Thaler*, 684 F.3d 597, 604 (5th Cir. 2012); *see also Harrington*, 562 U.S. at 105 ("When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.").

To demonstrate deficient performance, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688; *see also Harrington*, 562 U.S. at 105 ("The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom.") (citing *Strickland*, 466 U.S. at 690).  This is a "highly deferential" inquiry, in which "counsel is strongly presumed to have rendered adequate assistance" and that the challenged conduct was the product of reasoned trial strategy. *Strickland*, 466 U.S. at 689–90; *see also Pape v. Thaler*, 645 F.3d 281, 292 (5th Cir. 2011).  To overcome this presumption, a petitioner must identify counsel's acts or omissions that did not result from reasonable professional judgment.  *Strickland*, 466 U.S. at 690.  Counsel's error, even if professionally unreasonable, does not warrant setting aside a conviction if the error had no effect on the outcome. *Id.* at 691 (citation omitted).  To establish prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "In short, a petitioner cannot demonstrate prejudice by showing that, but for counsel's deficient performance, he would have been entitled to a new trial under state law.  Rather, a petitioner must also demonstrate that counsel's deficient performance rendered the result of his trial unreliable or the proceeding fundamentally unfair." *Green*, 160 F.3d at 1043 (internal citation omitted).

The state habeas court considered and rejected MacDonald's ineffective assistance of counsel claims. "[T]he test for federal habeas purposes is *not* whether [the petitioner] made [the showing required by *Strickland*]." *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003). "Instead, the test is whether the state court's decision—that [the petitioner] did *not* make the *Strickland*-showing—was contrary to, or an unreasonable application of, the standards, provided by the clearly established federal law (*Strickland*), for succeeding on his IAC claim." *Id.* A petitioner's conclusory allegations of ineffective assistance of counsel will fail to rebut a state court's finding that his counsel was not deficient or that he was not prejudiced by his counsel's performance. *See Ross v. Estelle*, 694 F.2d 1008, 1011–12 (5th Cir. 1983). "An assertion is conclusory if it relies on inferences without also setting forth the facts that support those inferences." *Favela v. Collier*, No. 22-40415, 91 F.4th 1210, 1213 (5th Cir. Jan. 31, 2024) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 898–99 (1990) and Black's Law Dictionary (11th ed. 2019)).

1.    *The claim of counsel's failure to investigate an alternative perpetrator theory of defense.*

MacDonald argues that trial counsel failed to investigate an alternative perpetrator theory of defense. (Docket Entry No. 1 at 9). MacDonald asserts that on May 5, 2017, a Conroe police officer, Michael Carey, was dispatched to an apartment where he spoke with T.T. (*Id.*). T.T. raised the issue of possible sexual abuse of J.B. (*Id.*). MacDonald was interviewed by Carey and a case worker with Child Protective Services interviewed J.B. (*Id.*). In his federal petition MacDonald alleges that

> Information was conveyed to Officer Carey regarding abuse of [J.B.] by her maternal grandfather . . . who had been released from prison. [J.B.] and [MacDonald] conveyed the information to Officer Carey, and substantial evidence of that was in Carey's report. At trial, defense counsel began questioning [MacDonald] regarding the grandfather . . . but was precluded continuing the

14

questioning when the prosecutor asserted that the state had filed a motion in limine to prevent questioning as to an alternative perpetrator theory. Subsequent to the trial [MacDonald] asked the District Court for a copy of the motion in limine and was informed no such motion was in the file of the case. Assuming the state failed to file a formal motion in limine the trial court was in error stating that such motion had been granted. Defense counsel should have objected. Alternatively, had the state filed such motion and it had been granted defense counsel should have objected to the granting of the motion. Prior to trial Julya McDonald had information from [J.B.] that she was being abused by [her grandfather]. [MacDonald] believes in good faith that CPS records reflect sexual abuse issues existed in [the victim's mother's] family, which involved [J.B.]'s mother. Defense counsel failed to conduct any investigation into such matters although brought to defense counsel's attention by [MacDonald]. [The grandfather] was subpoenaed for [MacDonald]'s trial but was never called to testify. No CPS record of [the victim's mother's] family were investigated, no motion file [sic] with the trial court to cause their production. No bill of exception was made to obtain and preserve testimony from [MacDonald] that was prevented by the state's motion in limine if the state had filed a written motion and it had been granted by the trial court. Defense counsel(s) should have investigated the alternative perpetrator theory, obtained evidence in support, noticed the state of the defense, and presented the defense at trial. As noted in ground one defense counsels failed to interview a number of defense witnesses who had information suggesting an alternative perpetrator(s).

(*Id.* at 9–11) (internal citations to the record omitted).

On direct appeal MacDonald argued that the trial court erred by denying admission of alternative perpetrator evidence. *See MacDonald*, 2020 WL 1036443, at *4. In rejecting MacDonald's argument, the appeals court explained:

A.  Alternative Perpetrator Evidence

In support of his first issue, MacDonald essentially makes two arguments. First, he contends he established the requisite nexus between the alternate perpetrator and the offense. Second, he claims that the nexus requirement and Rule 403 balancing are unconstitutional as applied.

1.  Nexus Requirement

"Relevant evidence" is evidence generally admissible and is defined as evidence that has "any tendency to make a fact more or less probable than it would be without the evidence; and ... the fact is of consequence in determining the action." Tex. R. Evid. 401. Texas Rule of Evidence 403, on the other hand, provides that "[t]he court may exclude *relevant* evidence if its probative value is substantially

outweighed by a danger of ... unfair prejudice, confusing the issues, [or] misleading the jury[.]" *Id.* 403 (emphasis added). To be admissible, alleged alternative perpetrator evidence must be sufficient, alone or in combination with other evidence in the record, to show a nexus between the crime charged and the alleged alternative perpetrator. *Wiley v. State*, 74 S.W.3d 399, 406 (Tex. Crim. App. 2002). Evidentiary rulings rarely rise to the level of denying the constitutional right to present a meaningful defense. *Potier v. State*, 68 S.W.3d 657, 659 (Tex. Crim. App. 2002). "The alternative perpetrator defense typically arises in 'who done it' cases where the complaining witness does not know [her] attacker." *Ex Parte Huddlestun*, 505 S.W.3d 646, 661 (Tex. App.—Texarkana 2016, pet. ref'd).

The defense sought to admit evidence that J.B. made a statement to the SANE regarding her grandfather touching her private area, specifically that "[h]e touched my tee tee. With his hand. He used toilet paper on his hand to wipe me." This statement bears no resemblance to the act the State charged MacDonald with. In the excluded statements, J.B. does not accuse her grandfather of using his sexual organ to touch her anus. Instead, she mentions that he touched her private area with toilet paper to wipe her. The proffered alternative perpetrator evidence was not sufficient on its own or in combination with other evidence to establish a nexus between the crime charged and J.B.'s grandfather. *Wiley*, 74 S.W.3d at 406; *Michaelwicz v. State*, 186 S.W.3d 601, 617 (Tex. App.—Austin 2006, pet. ref'd); *Martinez v. State*, 212 S.W.3d 411, 424 (Tex. App.—Austin 2006, pet. ref'd) (concluding exclusion of evidence was proper when alternative perpetrator evidence failed to establish a connection between the complainant's brother and the abuse alleged and any suggestion the brother was an alternative perpetrator was "meager and speculative"). The absence of the requisite nexus is especially true when J.B. positively identified her father, rather than a stranger, as the one who penetrated her anus with his sexual organ. *See Huddlestun*, 505 S.W.3d at 661; *Ramirez v. State*, No.14-05-00435-CR, 2006 WL 2345952, at *4 (Tex. App.—Houston [14th Dist.] Aug. 15, 2006, no pet.) (mem. op., not designated for publication) (noting that the absence of a nexus was especially true when the victim testified with certainty her father "did these things," even though she lived with other different male adults).

Even if true, J.B.'s statement does not link her grandfather to the offenses for which MacDonald was tried or even establish that the grandfather committed a crime. *See Wiley*, 74 S.W.3d at 406–07; *Ruiz v. State*, 272 S.W.3d 819, 830 (Tex. App.—Austin 2008, no pet.) (noting that allegations of abuse against a grandfather, even if true, "would not bear on whether appellant also abused her"); *Michaelwicz*, 186 S.W.3d at 617. MacDonald does not point to any evidence showing the grandfather engaged in the conduct described in the indictment. Likewise, the trial court could have reasonably concluded that the statements made about the grandfather were not relevant to whether MacDonald committed the sexual assault against J.B. as alleged in the indictment, as they bore no resemblance to the crime charged. *See* Tex. R. Evid. 401. Because we have concluded the trial court did not err in excluding the alternative perpetrator evidence, we need not determine if the exclusion of that

evidence prevented appellant from presenting a meaningful defense. *See Garcia v. State*, 397 S.W.3d 860, 864 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (citing *Ray v. State*, 178 S.W.3d 833, 835 (Tex. Crim. App. 2005)).

    2.  Unconstitutional as Applied

"As applied" constitutional challenges are subject to the error preservation requirement and must be objected to at trial. *Reynolds v. State*, 423 S.W.3d 377, 383 (Tex. Crim. App. 2014). Although MacDonald sought to admit alternative perpetrator evidence, he never raised a constitutional objection or pointed out to the trial court that the exclusion of the evidence prevented him from putting on a meaningful defense. MacDonald failed to preserve his "as applied" constitutional challenge. *See id.*

We overrule MacDonald's first issue.

*MacDonald*, 2020 WL 1036443, at *4–6 (internal footnotes omitted).

MacDonald presented this claim in his state habeas application. As part of the state habeas proceeding, the state district court judge instructed MacDonald's trial attorneys to answer the following question: "Did you consider raising a defense that a person other than the applicant committed the charged offense? If so, what witnesses did you interview and what evidence did you review in preparation for raising this defense? What efforts did you make to raise this defense? Please explain fully."

(Docket Entry No. 7-23 at 16).

Ms. Barker filed the following affidavit in response:

Yes, we attempted to raise the defense that another person committed the offense. I interviewed the outcry witness [T.T.], CPS worker, the grandfather Keith Bergman (twice), the uncle Bergman (c/w lived with both the grandfather and uncle for a time), daycare teacher to see what she knew about the grandfather or any other outcrys, defense SANE nurse for insight into State's SANE nurse and report, memory expert, and attempted to contact grandfather's ex-wife.
I reviewed the offense reports, statements, CPS records, forensic interview DVD, recording of the outcry from babysitter/outcry witness, criminal history of grandfather and uncle, SANE report.
Attempted to raise this defense several times during trial through the relevant witnesses but court would not allow that line of questioning nor any evidence of an alternate perpetrator.

(*Id.* at 25).

The state habeas judge rejected MacDonald's ineffective assistance of counsel claim.  (*See id.* at 42–44).  The state habeas judge found that MacDonald "failed to present evidence that his attorneys should have raised at trial that would have established a nexus between the charged conduct and an alternative perpetrator."  (*Id.* at 43).

The record reflects that MacDonald's defense attorney *did* try to argue an alternative perpetrator at trial, but the trial court did not allow the introduction of alternative perpetrator evidence or questioning.  Counsel is not deficient for trying to make an argument that the trial judge does not allow.  *See, e.g.*, *Mahmood v. United States*, Civil Action No. 6:18cv489, 2020 WL 2758791, at *20 (E.D. Tex. Apr. 29, 2020) ("[C]ounsel cannot be ineffective for failing to do something he actually did . . . ."), *report and recommendation adopted*, No. 6:13cr32, 2020 WL 2747245 (E.D. Tex. May 27, 2020); *Harris v. United States*, No. CR G-03-14, 2011 WL 13308162, at *5 (S.D. Tex. Nov. 16, 2011) ("Each of the arguments [the petitioner] claims counsel failed to make are contained in the motions to suppress evidence, which counsel filed on [the petitioner's] behalf. These motions were considered and denied by the trial court. [The petitioner] cannot now claim counsel was ineffective for failing to make arguments that counsel actually made.").  Moreover, the court of appeals specifically found that the trial court did not err in excluding the alternative perpetrator evidence.

MacDonald has failed to show that the state courts' determination was contrary to, or involved an unreasonable application of, *Strickland*, or that the decision involved an unreasonable determination of the facts based on the evidence in the record.  No basis for habeas relief is shown, and the respondent is entitled to dismissal of this claim.

2.    *The claim of counsel's failure to call witnesses.*

MacDonald argues that his trial counsel "failed to conduct a reasonable amount of pretrial investigation, including seeking out, contacting, interviewing and securing the trial testimonies" at the guilt/innocence phase of the trial of Julya MacDonald, Sandra Mobley, Melody Mobley, Jeanette Billot, Robert K. Radakovich, and Justin MacDonald.[3]   (Docket Entry No. 1 at 5). MacDonald also argues that defense counsel failed to adequately prepare the defense witnesses— Billot, Radakovich, and Justin—who did testify at the punishment phase.  (*Id.* at 7).

"[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative."  *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (citation omitted); *see also Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002).  "[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."  *Day*, 566 F.3d at 538 (citation omitted).

MacDonald presented this claim in his state habeas application.  As part of the state habeas proceeding, the state district court judge instructed MacDonald's trial attorneys to answer the following relevant questions:

(1) Please describe the steps you took to prepare for the applicant's trial. What witnesses did you interview? What defensive theories did you consider raising? Please explain fully.

(2) Did you consider calling witnesses to testify that the applicant did not have the character to commit the charged offense?  If not, why not?  Did you consider calling

---

[3] Because several of these individuals share the same last name, the court refers to Julya MacDonald as Julya, Sandra Mobley as Sandra, Melody Mobley as Melody, and Justin MacDonald as Justin.

witnesses to testify about the applicant's character for truthfulness?  If not, why not? Please explain fully?

(3) Please describe the witnesses you interviewed in preparation for the punishment phase of trial.  Were there witnesses you interviewed that you decided not to call? If so, why did you choose not to call them?  Please explain fully.

(4) Did you tell Julya MacDonald, the applicant's mother, that you did not expect the applicant's trial to proceed to punishment and that you were unprepared for the punishment phase?

(Docket Entry No. 7-23 at 16).

Ms. Barker filed the following affidavit in response:

[Question] 1: . . .

Preparation: I reviewed all offense reports, statements, CPS records, SANE report. I viewed the forensic interview twice and transcribed and reviewed the outcry recording.  I identified witnesses from discovery.  Met with defendant several times. Interviewed defendant's mother several times.  Requested detailed timeline of events and witnesses from defendant.  Reviewed timeline.  Discussed hiring investigator with defendant.  Defendant's mother wanted me to use an investigator that she knew and defendant agreed so that investigator was hired.   That investigator closed his business so I then hired another investigator.  Hired defense expert SANE nurse and discussed results of exam and strategy.  Hired memory expert and discussed case, strategy, and testimony.  Interviewed outcry witness [T.T.], CPS worker, daycare teacher, complaining witness' (c/w) grandfather Keith Bergman, c/w uncle Bergman, defendant's college instructor Mr. Radacovich, defendant's mother, attempted to interview c/w mother and grandmother but was unsuccessful in reaching them.  Discussed interviews of witnesses with defendant and decided that the daycare teacher would not benefit defendant, that the defendant's instructor would be a good punishment witness, and that even though there were concerns about defendant's mother testifying, she could testify at both portions of the trial.  However, he could change his mind at any point prior to calling her as a witness.  I identified and outlined specific issues from discovery.  Discussed strategy with defendant.  Drafted questions for State witnesses and defense witnesses.  Drafted voir dire. Met with co-counsel to discuss strategy, witnesses, and trial procedure.

Witness Interviews: Witnesses Interviewed: Interviewed outcry witness [T.T.], CPS worker, daycare teacher, c/w grandfather Keith Bergman, c/w uncle Bergman. Defendant's college instructor Mr. Radacovich, defendant's mother Julya MacDonald, attempted to interview c/w mother and grandmother but was unsuccessful in reaching them.  Also interviewed defense nurse expert and memory expert.  Defendant's mother brought two additional potential witnesses to court on

the second day of the punishment and told me that she wanted them to testify, I asked defendant if he wanted them to testify and he said he was fine with them testifying. Once he agreed, I explained the process and interviewed them to see how they would answer the questions I would ask and the ones the prosecutor would possibly ask.

Defense Theories:
a. Didn't Happen—Focus was on the age of the c/w, her memory, and transposing sexual acts of mother and boyfriend that she witnessed onto herself when they lived in the travel trailer together. Expert testified as to how this could happen. Also, there were no physical injuries.

b. If Happened, Grandfather Did It—Attempted to introduce evidence of c/w stating grandfather touched her privates through appropriate witnesses. She made these comments to the forensic interviewer, SANE nurse, and the outcry witness. The court would not allow us to present the alternate perpetrator evidence.

[Question] 2: . . .

Yes, I discussed with the defendant who he thought would be good witnesses for him. There were two witnesses, his mother and his instructor. We decided that the instructor would be a good punishment witness because he only had knowledge of defendant's successes at school and his potential contributions to society. We had his mother lined up to testify but defendant decided it would be better not to call her during the guilt/innocence phase. The defendant and I were in Mr. Walker's office during lunch prior to the State resting its case. We again discussed the fact that his mother and father were accused of and arrested for sexual assault of a child in their home when defendant was growing up. I explained that his mother was not convicted of the offense and that the State can't just bring that up. The defendant was concerned that his mother's testimony could be unpredictable and didn't want that information to come out during his trial. The defendant told me that he thought it would be better if she did not testify during guilt/innocence phase.
I did not consider calling witnesses specifically for testimony on the defendant's truthfulness. This was a sexual assault of a child case and not a theft or fraud type case.

[Question] 3: . . .

Witnesses interviewed for punishment
Julya MacDonald, daycare teacher, and college instructor Radakovich are the witnesses that l remember were interviewed to testify at punishment.
Justin MacDonald and Jeanette Billiot were added with a brief explanation of the process and question/answer interview.
I decided not to call the daycare teacher at either phase because her testimony would not have benefited the defendant. I don't recall having a witness lined-up but not calling for punishment phase.

[Question] 4: . . .

At no time did I ever tell Julya MacDonald that I did not expect the applicant's trial to proceed to punishment nor did I tell her that I was unprepared for the punishment phase.

(Docket Entry No. 7-23 at 23–25).

The state habeas judge rejected MacDonald's ineffective assistance of counsel claims. (*See id.* at 42–44). In reaching this conclusion, the court made the following relevant findings and conclusions:

<u>FINDINGS OF FACT</u>

1. The applicant was charged by indictment with aggravated sexual assault of a child. The applicant pleaded not guilty, but a jury found him guilty as charged. After hearing additional evidence, this Court sentenced the applicant to imprisonment for forty-five years.

2. The court of appeals affirmed this Court's judgment, which is now final. *See MacDonald v. State,* No. 09-18-00399-CR, 2020 WL 1036443, at *6 (Tex. App.— Beaumont Mar. 4, 2020, pet. refd) (mem. op., not designated for publication).

3. On October 11, 2021, the applicant filed his first application for a writ of habeas corpus pursuant to article 11.07 of the Code of Criminal Procedure in the above-numbered cause, asserting in two grounds for relief that he received ineffective assistance of trial counsel.

4. The Court is familiar with the performance of the applicant's attorneys, Robbie Barker and Jarrod Walker, who have long practiced in the courts of Montgomery County and are well qualified to represent defendants in criminal cases.

5. Barker has submitted a credible affidavit in answer to the· applicant's claims of deficient performance.

6. Julya MacDonald's claim that Barker indicated she was unprepared for the punishment phase of trial is not credible.

7. Julya MacDonald's claim that Barker did not interview her prior to trial is not credible.

8. Julya MacDonald's affidavit testimony about what J.B. told her would be inadmissible as hearsay at trial.

9.  Barker conducted a thorough pre-trial investigation and interviewed numerous witnesses, including Julya MacDonald and Robert Radakovich.

10.  Barker made a reasonable, strategic decision about what witnesses to call at both phases of trial.

11.  Barker made a reasonable, strategic decision, in conjunction with the applicant, not to call Julya MacDonald at the guilt phase of trial.

12.  The applicant has failed to present evidence that his attorneys should have raised at trial that would have established a nexus between the charged conduct and an alternative perpetrator.

CONCLUSIONS OF LAW

1.  There remain no previously unresolved issues of fact material to the legality of the applicant's conviction and sentence, and an evidentiary hearing is not required.

2.  The applicant has failed to prove by a preponderance of the evidence that he was denied his right to the effective assistance of counsel.  *See Strickland v. Washington,* 466 U.S. 668, 669 (1984).

(*Id.* at 42–44).  The state habeas court denied relief.  (*Id.* at 44).

This court examines the specific allegations related to each of the individuals MacDonald argues should have been called to testify at trial.

a.    Julya McDonald

Julya is MacDonald's mother.[4]  MacDonald has submitted a sworn statement from Julya, which was also submitted as part of the state habeas proceeding.  (*See* Docket Entry No. 7-22 at 79–81; Docket Entry No. 2 at 2–4).  In her affidavit, Julya states that she was not called to testify at the guilt/innocence phase of the trial, despite being available and willing to do so.  (Docket Entry No. 7-22 at 79–81; Docket Entry No. 2 at 2–4).  She states that neither of MacDonald's defense attorneys interviewed her before trial or talked with her about testifying at the guilt/innocence

---

[4] The petition spells Julya's last name as "McDonald" but it appears that her last name is spelled the same as the petitioner's—"MacDonald."

23

phase of trial. (Docket Entry No. 7-22 at 79–81; Docket Entry No. 2 at 2–4). She declares that had she been called to testify during the guilt/innocence phase of trial, she would have testified that on one occasion J.B. told her that "pa pa is mean"—referring to J.B.'s maternal grandfather. (Docket Entry No. 7-22 at 79–81; Docket Entry No. 2 at 2–4). Julya asked J.B. what she meant by that statement and J.B. replied that "Pa Pa hurts me, he ties me up." (Docket Entry No. 7-22 at 79–81; Docket Entry No. 2 at 2–4). Julya states that she told the CPS investigator, Brooke Hudson, about what J.B. told her, and that to her knowledge, CPS did not investigate the matter. (Docket Entry No. 7-22 at 79–81; Docket Entry No. 2 at 2–4). Julya also declares that on several occasions when J.B. would return to MacDonald's home after visiting with J.B.'s mother, J.B. would have "rashes, blisters and some bleeding in her private parts." (Docket Entry No. 7-22 at 79–81; Docket Entry No. 2 at 2–4). Julya states that she told Ms. Barker about this the day before the trial began. (Docket Entry No. 7-22 at 79–81; Docket Entry No. 2 at 2–4). Julya further alleges that J.B. "did not act the same" after being taken to San Antonio by J.B.'s mother. (Docket Entry No. 7-22 at 79–81; Docket Entry No. 2 at 2–4). Specifically, Julya states that J.B. would "show her panties to everyone in an unladylike manner," she would attempt to kiss MacDonald and others with her tongue out, and she told Julya "Look at my boobie. I got boobies, like my mom has got." (Docket Entry No. 7-22 at 79–81; Docket Entry No. 2 at 2–4).

To the extent MacDonald is arguing that Julya's testimony at the guilt/innocence phase of trial would have supported an alternative perpetrator defense—as discussed above—the state appeals court held that the trial court did not err in excluding the alternative perpetrator evidence. Much if not all of Julya's proposed testimony at the guilt/innocence phase concerns matters that the trial court excluded. Counsel did not perform deficiently by not calling a witness who would have testified to matters that the trial court had deemed were excluded.

Moreover, MacDonald himself decided that he did not want Julya to testify during the guilt/innocence phase of trial.  In the affidavit submitted as part of the state habeas proceeding, Ms. Barker explained that Julya was "linked up" to testify during the guilt/innocence phase but that MacDonald told her that he thought it would be better if Julya did not testify.  MacDonald was concerned that Julya's testimony could be unpredictable and he did not want the information coming out at trial that Julya and his father were arrested for sexual assault of a child in their home, despite Ms. Barker telling McDonald that the State could not "just bring that up" because Julya was not convicted of a crime.  MacDonald has not submitted any evidence disputing Ms. Barker's affidavit.

MacDonald has failed to show that the state courts' determination was contrary to, or involved an unreasonable application of, *Strickland*, or that the decision involved an unreasonable determination of the facts based on the evidence in the record.  No basis for habeas relief is shown, and the respondent is entitled to dismissal of this claim.

> b.    Sandra Mobley, Melody Mobley, Jeanette Billot, Robert Radakovich, and Justin MacDonald

Sandra is MacDonald's grandmother.  MacDonald has submitted a sworn statement from Sandra, which was also submitted as part of the state habeas proceeding.  (*See* Docket Entry No. 7-22 at 82–83; Docket Entry No. 2 at 5–6).  In her affidavit, Sandra states that she would have testified during the guilt/innocence and the punishment phases of trial to J.B. having an abnormality of her genitals and behavior changes she noticed in J.B. when she returned from a trip to San Antonio with J.B.'s mother.  (*See* Docket Entry No. 7-22 at 82–83; Docket Entry No. 2 at 5–6).  She also would have testified that MacDonald was a truthful person and of good character.  (*See* Docket Entry No. 7-22 at 82–83; Docket Entry No. 2 at 5–6).  She states in her affidavit that

no attorney representing MacDonald spoke to her about information she had regarding MacDonald or his daughter, J.B.  (*See* Docket Entry No. 7-22 at 82–83; Docket Entry No. 2 at 5–6).

Melody is MacDonald's aunt.  MacDonald has submitted a sworn statement from Melody, which was also submitted as part of the state habeas proceeding.  (*See* Docket Entry No. 7-23 at 1–2; Docket Entry No. 2 at 7–8).  In her affidavit, Melody states that she would have testified during the guilt/innocence and the punishment phases of trial that J.B. once confused receiving a spanking "in" her butt with receiving one "on" her butt, which lead Melody to believe that J.B. was confused about human anatomy generally.  (*See* Docket Entry No. 7-23 at 1–2; Docket Entry No. 2 at 7–8).  She claims that she tried to share this information with one of MacDonald's attorneys, but the attorney showed "no interest."  (*See* Docket Entry No. 7-23 at 1–2; Docket Entry No. 2 at 7–8).  She also would have testified that MacDonald was always a truthful person with her and was of good character in her opinion.  (*See* Docket Entry No. 7-23 at 1–2; Docket Entry No. 2 at 7–8).  She says that no attorney representing MacDonald spoke to her about information she had regarding MacDonald and his daughter, J.B.  (*See* Docket Entry No. 7-23 at 1–2; Docket Entry No. 2 at 7–8).

Jeanette Billot[5] was MacDonald's neighbor in the same apartment complex.  MacDonald has submitted a sworn statement from Billot, which was also submitted as part of the state habeas proceeding.  (*See* Docket Entry No. 7-23 at 3–4; Docket Entry No. 2 at 9–10).  Billot testified during the punishment phase of trial.  In her affidavit, Billot says that she would have testified during the guilt/innocence phase of trial that MacDonald was truthful person and of good moral character.  (*See* Docket Entry No. 7-23 at 3–4; Docket Entry No. 2 at 9–10).  She also would have testified that J.B. acted like a normal child and she never gave "any indication by her manor [sic]

---

[5] Billot was known as Jeanette Davis at the time of the trial.  (*See* Docket Entry No. 7-7 at 53).

or otherwise" that she was being mistreated. (*See* Docket Entry No. 7-23 at 3–4; Docket Entry No. 2 at 9–10). She would have testified that J.B. was "comfortable" around her husband and did not exhibit any fear of men. (*See* Docket Entry No. 7-23 at 3–4; Docket Entry No. 2 at 9–10). Billot states that she came to court before the start of the punishment phase of trial, at Julya's request. (*See* Docket Entry No. 7-23 at 3–4; Docket Entry No. 2 at 9–10). Billot says Ms. Barker did not interview her about information she may have had concerning MacDonald or J.B., or prepare her for testifying at the punishment phase of trial. (*See* Docket Entry No. 7-23 at 3–4; Docket Entry No. 2 at 9–10).

Robert Radakovich is a professor of machining at Lone Star College, and MacDonald was one of his students. MacDonald has submitted a sworn statement from Radakovich, which was also submitted as part of the state habeas proceeding. (*See* Docket Entry No. 7-23 at 5–6; Docket Entry No. 2 at 11–12). Radakovich testified during the punishment phase of trial. (*See* Docket Entry No. 7-23 at 5–6; Docket Entry No. 2 at 11–12). In his affidavit, Radakovich says that he would have testified during the guilt/innocence phase of trial that MacDonald was a truthful person. (*See* Docket Entry No. 7-23 at 5–6; Docket Entry No. 2 at 11–12). Radakovich states that Ms. Barker called him one or two days before trial started. (*See* Docket Entry No. 7-23 at 5–6; Docket Entry No. 2 at 11–12). The conversation was brief and that no specifics were discussed regarding the testimony he was going to give. (*See* Docket Entry No. 7-23 at 5–6; Docket Entry No. 2 at 11–12). Julya asked Radakovich to testify during the punishment phase. (*See* Docket Entry No. 7-23 at 5–6; Docket Entry No. 2 at 11–12).

Justin is MacDonald's brother. MacDonald has submitted a sworn statement from Justin, which was also submitted as part of the state habeas proceeding. (*See* Docket Entry No. 7-23 at 7–8; Docket Entry No. 2 at 13–14). In his affidavit, Justin states that he would have testified

during the guilt/innocence phase of trial that J.B. began trying to kiss him with his tongue out when J.B. returned from her mother's house, that J.B. was a happy child, and that McDonald is a truthful person and of good character. (*See* Docket Entry No. 7-23 at 7–8; Docket Entry No. 2 at 13–14). For the punishment phase of trial, Justin says that no defense attorney "fully prepared" him for his testimony. (*See* Docket Entry No. 7-23 at 7–8; Docket Entry No. 2 at 13–14).

MacDonald fails to overcome the presumption that trial counsel had a valid legal strategy for not calling Sandra, Melody, Billot, Radakovich, and Justin as character witnesses during the guilt/innocence phase of the trial. As discussed above, MacDonald's trial counsel submitted an affidavit as part of the state habeas proceeding explaining that she did not consider calling witnesses to testify about MacDonald's truthfulness, because he was not charged with theft or fraud, but with the sexual assault of a child. Counsel's strategic reason as to why she did not consider calling character witnesses to testify as to MacDonald's truthfulness was not unreasonable. Moreover, MacDonald asserts that Melody, Billot, and Radakovich would have testified solely as character witnesses. "[W]ithout some showing [that] alleged additional character witnesses actually possessed personal knowledge of admissible evidence, petitioner cannot show the failure of petitioner's trial counsel to call any such witness was objectively unreasonable." *Jasper v. Thaler*, 765 F. Supp. 2d 783, 869 (W.D. Tex. 2011) (citing *Neal v. Puckett,* 286 F.3d 230, 237 (5th Cir. 2002)), *aff'd,* 466 F. App'x 429 (5th Cir. 2012).

MacDonald also fails to demonstrate that trial counsel's strategy not to call Sandra and Melody during the punishment phase of trial was ill chosen or that counsel's alleged failure to adequately prepare the defense witnesses (Billot, Radakovich, and Justin) who testified at the punishment phase prejudiced MacDonald.

When a petitioner alleges ineffective assistance of counsel in a non-capital sentencing context, a reviewing court must determine whether there is a reasonable probability that but for trial counsel's errors, the petitioner's sentence would have been significantly less harsh. *See Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993); *Miller v. Dretke*, 420 F.3d 356, 362 (5th Cir. 2005). When assessing the prejudice caused by counsel's failure to present potentially mitigating evidence, the Fifth Circuit instructs the federal habeas court to "reweigh the evidence in aggravation against the totality of available mitigating evidence." *Miller*, 420 F.3d at 364 (citation omitted). In doing so, a court may consider: (1) the actual amount of the sentence imposed; (2) the minimum and maximum sentences possible under the relevant statute or sentencing guidelines; (3) the relative placement of the sentence actually imposed within that range; (4) and the various relevant mitigating and aggravating factors that were properly considered by the sentencer. *Id.* at 365.

MacDonald is not entitled to relief because the state court's decision that he failed to establish prejudice under *Strickland* was not an unreasonable application of clearly established federal law. MacDonald was convicted of aggravated sexual assault of a child. (*See* Docket Entry No. 7-7 at 67–68). The maximum sentence was life in prison and the minimum sentence was 25 years in prison. *See* Tex. Penal Code § 22.021(f)(1); (Docket Entry No. 7-7 at 67). MacDonald received a 45-year sentence. During trial, J.B. testified that MacDonald put his sexual organ in her anus on more than one occasion. (*See* Docket Entry No. 7-5 at 46–63). The jury also heard testimony from the outcry witness, T.T. (*See id.* at 79–103). During the punishment phase, J.B.'s mother testified about how the abuse continued to affect J.B., including suffering from intense nightmares, not allowing her mother to clean her private parts, and not wanting to interact with men. (*See* Docket Entry No. 7-7 at 8–9). A licensed professional counselor testified that victims

29

who experience sexual abuse from their father have a harder time developing healthy relationships with other males and a healthy close relationship with others in general. (*Id.* at 16–26). During the punishment phase, the witnesses called by the defense generally testified that MacDonald was a good student, possesses leadership skills, served in the Army, is a hard worker, is a good father, and is intelligent. (*Id.* at 27–33, 35–56). The state habeas court found that MacDonald's attorney made a reasonable, strategic decision about what witnesses to call at both phases of trial and recommended that MacDonald's ineffective assistance of counsel claims be denied. The Court of Criminal Appeals denied this ground for review on the findings of trial court without hearing and on the court's independent review of the record. The question on federal habeas review is not whether this court "'believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007)).

In this case, the mitigating factors that MacDonald was a good student, is a hard worker, served in the military, and is considered trustworthy were relatively minor when compared to the significant aggravating factor of MacDonald sexually abusing his four-year-old daughter. There is not a reasonable probability MacDonald would have received a significantly less harsh sentence if additional character witnesses had testified during the sentencing phase of trial, especially because these additional character witnesses would have provided similar testimony about MacDonald's character as other witnesses who did testify. *See Dale v. Quarterman*, 553 F.3d 876, 880–81 (5th Cir. 2008) (commenting that "[w]hen a number of people swear to undifferentiated, verbatim statements, this court justifiably discounts both the statements' veracity and the intensity of the sentiments expressed. Although the affidavits suggest that some additional mitigating

evidence could have been produced on [the petitioner's] behalf, they do not create a reasonable probability that a sentencing court would have given [the petitioner] a significantly less harsh sentence had it been apprised of this information.") (internal citation omitted). MacDonald does not explain or describe how his attorneys failed to adequately prepare Billot, Radakovich, and Justin for their testimony, or how more or different preparation would have resulted in MacDonald receiving a significantly less harsh sentence.

The state habeas courts' conclusion on this point was not unreasonable. No basis for habeas relief is shown, and the respondent is entitled to dismissal of this claim.

## IV.    Certificate of Appealability

MacDonald has not requested a certificate of appealability, but Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. *See* 28 U.S.C. § 2253. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To warrant a certificate of appealability as to claims denied on their merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack*, 529 U.S. at 484). When relief is denied based on procedural grounds, a petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that jurists of reason "would find it

31

debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. A district court may deny a certificate of appealability on its own, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

After carefully considering the record, the court concludes that MacDonald has not met the requisite showing. There are no grounds to issue a certificate of appealability.

## V.    Conclusion

MacDonald's petition for a writ of habeas corpus, Docket Entry No. 1, is dismissed with prejudice. Any pending motions are denied as moot. A certificate of appealability will not issue. Final judgment is separately entered.

SIGNED on August 5, 2025, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge